**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF MICHIGAN**

---

YUNISADAY GUTIERREZ MACIAS,

Petitioner, Case No.

v.

JOSE FERNANDO JIMINEZ INERARITY,

Respondent.

---

**VERIFIED COMPLAINT AND PETITION FOR ISSUANCE OF A SHOW CAUSE ORDER AND FOR RETURN OF MINOR CHILD TO BRAZIL**

---

NOW COMES PETITIONER, YUNISADAY GUTIERREZ MACIAS, by and through her attorneys, Masters Law Group, LLC, and as her Petition to the Court for Issuance of a Show Cause Order and Demand for Return of Minor Child to Brazil, alleges and shows to the Court as follows:

## I. Introduction

1. The Petitioner, YUNISADAY GUTIERREZ MACIAS (hereinafter referred to as the "Petitioner"), is a resident of Rio Grande del Sur, Brazil (hereinafter referred to as "Brazil") seeking the return of her minor child who was wrongfully retained in the United States of America from Brazil by the child's father without the Petitioner's knowledge or consent on or about April 1, 2023.

2. Petitioner brings this action pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10494 (1986)) (hereinafter, the "Convention," a

copy of which is attached hereto as "Exhibit A"). The Convention came into effect in the United States of America (hereinafter, "United States") on July 1, 1988, and was ratified between the United States and Germany. Article I of the Convention explains that its objectives are: "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting states; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Article II of the Convention provides that "[t]he judicial or administrative authorities shall act expeditiously in proceedings for the return of children."

3. The provisions of the Convention have been given the force and effect of law by the United States Congress through the passage of the *International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq.* (1995) (hereinafter "ICARA"). The ICARA was enacted for the specific purpose of "establish[ing] procedures for the implementation of the Convention in the United States." *42 U.S.C. § 11601(b)(l)*.

4. The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of the children; it does not, however, allow the district court to consider the merits of the underlying custody dispute.

**II. Jurisdiction and Venue**

5. Jurisdiction is conferred on this Court by *28 U.S.C. § 1331* and *42 U.S.C.§ 11603(a)*.

6. Venue is proper in the United States District Court for the Western District of Michigan pursuant to *28 U.S.C. § 9003, 28 U.S.C. § 139l(d)* and *42 U.S.C. § 11603(b)*, because the Respondent and minor child who are the subject of this Petition, which is in this District are located in the town of Allendale, Michigan, in the United States of America. Based upon information and belief, both the Respondent and child are located at 5399 Pierce Street, Allendale,

Michigan, in the United States of America.

**III. Parties and Wrongfully Removed Children**

7. Petitioner is a Cuban citizen and Brazilian temporary resident that has resided in Brazil since December 20, 2022. Petitioner is a doctor. Petitioner was born on August 18, 1990, in Sancti Spiritus, Cuba. Petitioner is both an "applicant" as defined in *42 U.S.C. § 11602(1)* and a "petitioner" as defined in *42 U.S.C. § 11602(4)*.

8. The Respondent, Jose Fernando Jiminez Inerarity ("Respondent"), is a Cuban citizen and American citizen. He is also a "respondent" within the meaning of 42 U.S.C. § 11602(6). On information and belief, Respondent is currently residing at a residence located in the State of Michigan in the United States of America.

9. Petitioner and Respondent are the parents of one minor child, namely: (1) K.F.J.G. (the "minor child" or "child") born in Sancti Spiritus in the country of Cuba (See Translated and Original Redacted Birth Certificate attached hereto as "Exhibit B"). The child is a minor under the age of sixteen (16) who is thus subject to the terms of this Convention in accordance with Article 4 thereof.

10. The parties were married in Cuba on April 16, 2010.

11. On May 20, 2015, the parties formally divorced in front of the Municipal Court of Justice of the Province of Sancti, Spiritus in the country of Cuba (See Translated Divorce Decree attached hereto as "Exhibit C").

12. As part of the parties' divorce decree, the Cuban Court entered a legal custody order over the minor child stipulating that the child would remain under the care and custody of Petitioner and that both parties would share parental decision-making responsibilities and parenting rights over the minor child. (See Cuban Allocation Judgment written in Spanish attached as "Exhibit D").

13. Subsequent to the parties' divorce, the child remained in Petitioner's care with Respondent exercising visitation rights without limitation and both parties' complying with the Cuban custody Order entered on May 20, 2015.

14. In or around September of 2015, Respondent moved to the United States of America ("United States") and as a temporary resident and did not return to Cuba for approximately two (2) years, at which time, he visited Cuba for approximately one (1) week to visit with the minor child.

15. In or around the year 2015, Petitioner moved in with her current spouse, Alexey Solenzal Omchina, to a residence in Cuba where they resided with the minor child.

16. Throughout the pendency of the September 2015 when Respondent moved to the United States until his first visit two (2) years later, the minor child lived solely and exclusively with Petitioner.

17. Respondent returned to the United States after his one week visit in or around the year of 2017, and continued to make annual or biennial visits after that, and the minor child continued to reside solely and exclusively with Petitioner in Cuba.

18. On August 9, 2021, Petitioner gave birth to her second son, the minor child's younger brother, in the country of Cuba. The minor child's brother resided solely and exclusively with Petitioner, her current spouse and the younger brother's father, and the minor child from the time he was born.

19. In the year 2022, Petitioner and her current spouse made the decision to permanently relocate with their two (2) minor children to the country of Brazil for professional

and personal reasons which they communicated directly to Respondent during his visit to Cuba in or around the month of September 2022. Respondent did not oppose this decision.

20. On or around December 20, 2022, Petitioner moved to Brazil with Alexey Solenzal Omchina, the minor child, and the minor child's younger brother with tourist visa's that were valid for one (1) year from the date of entry.

21. Once in Brazil, Petitioner and her family began to carry out the immigration regularization procedure in Brazil, obtaining the National Registry Portfolio Immigration Provisional Document with one (1) year of validity being granted to Petitioner and her family members guaranteeing them the same rights and duties enjoyed by Brazilian citizens.

22. The parties moved into a Brazilian residence located at Campo Mourao Street, Barrio Jardin, #1727, Ibiruba, Rio Grande del Sur, Brazil.

23. During the relocation and immigration process, constant communication was kept with Respondent via WhatsApp, video calls, and various forms of electronic direct messaging regarding the minor child. Respondent was kept informed of the minor child's location and immigration address and never expressed any disapproval regarding the move to Brazil.

24. Petitioner enrolled the minor child in school in Brazil at the start of the regular Brazilian school year which begins in February and the application was granted at the Edmundo Roether School in the city of Ibirubá.

25. In or around February 2023, Respondent notified Petitioner that he requested an appointment at the United States Interests Office in Havana, Cuba, that would grant the minor child a United States Visa permitting the child to permanent entry and exit permissions to and from the United States for purposes of visiting Respondent. Respondent notified Petitioner the

appointment was scheduled for March 17, 2023, and requested that the minor child travel with Respondent for one (1) month prior to the scheduled appointment to attend a pre-requisite medical check-up for the Visa application and to spend time with Respondent.

26. Petitioner requested that the appointment be rescheduled at the US Embassy in Brazil due to the upcoming scheduled start of the school year and Respondent informed Petitioner that this was not possible as it would cause delay in the Visa process.

27. Despite Petitioner's concerns, she permitted the minor child to travel with Respondent to secure the Visa, making a request to the Brazilian Immigration Authority to permit the minor child to travel for a period of less than ninety (90) days outside of Brazil.

28. Respondent was permitted to pick up the minor child in Brazil, attend the appointment at the Cuban embassy, and travel to the United States for a few days for the purpose of obtaining the intended permanent travel permission discussed by the parties.

29. Respondent confirmed with Petitioner that the minor child would be immediately returned to Brazil in the shortest amount of time possible once he obtained the regular entry permit to the United States, with the mutual understanding that this process would take a few days.

30. On or around April 1, 2023, Respondent traveled from Cuba to the United States with the minor child.

31. Once 15 (fifteen) days passed and Respondent has not returned the minor child to Brazil as promised, Petitioner became concerned and questioned Respondent. Respondent claimed that this was due to delays in the United States' bureaucratic Visa issuing process.

32. The parties agreed that the minor child would need to begin attending school in the United States so the child did not miss the start of the school year, with the mutual understanding that the child would attend Portuguese classes to maintain the cultural link and

continue learning the language of Portuguese and Brazilian customs and practices.

33. At this time, Petitioner continuously asked both Respondent and his spouse about the minor child's return and Respondent began meeting her with ambiguous answers or a complete lack of response.

34. In or around August of 2023, Respondent still had not returned the minor child to Brazil and Petitioner informed Respondent that the Immigration Regularization process of the family was completed, and that they gained residency in Brazil and the child's immigration regularization process is ready once he returns to Brazil to which Respondent responded by congratulating Petitioner and her family.

35. In or around the beginning of October 2023, Respondent requested from Petitioner a document that would guarantee the minor child's return to Brazil.

36. Upon sending all the requested documentation and information, Respondent informed Petitioner he would not be returning the minor child to Brazil and that he did not need to comply with the parties' lawful custody order giving Petitioner custody of the minor child.

37. Petitioner made repeated attempts to contact Respondent, his family and the minor child but has been prevented from communicating and left with little to no response and a refusal to return the minor child, resulting in Petitioner starting the complaint process through the Brazilian Ministry of Justice to initiate Hague Convention proceedings for return of the minor child to Brazil.

**IV. Respondent's Violation of the Convention and ICARA**

38. At the time Respondent wrongfully removed the minor child from Brazil and retained him in the United States, the child's habitual residence, within the meaning of Article 3 of the Convention, was Rio Grande del Sur, Brazil. Petitioner did not consent or subsequently

acquiesce to the minor child remaining in the United States.

39. The term "habitual residence" is undefined by the Convention. *Koch v. Koch*, 450 F.3d 703, 708 (7th Cir. 2006). The determination of habitual residence "is a fact-specific inquiry that should be made on a case-by-case basis. Moreover, a parent cannot create a new habitual residence by wrongfully removing and sequestering a child." *Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001). The analysis "focus[es] on the parents' last shared intent in determining habitual residence" *Koch*, 450 F.3d at 715.

40. In the present case, the below non-exhaustive list of actions of the parties clearly demonstrate that Brazil, not the United States, is the habitual residence of the child:

a. The minor child is a citizen of Cuba and a temporary resident of Brazil and is in the process of obtaining full citizenship in Brazil.

b. Petitioner is a citizen of Cuba and citizen of Brazil.

c. Respondent is a citizen of Cuba and the United States.

d. There is an active Cuban child custody order granting Petitioner custody rights over the minor child.

e. Petitioner is a doctor and lives in the country of Brazil.

f. Petitioner resided with the minor child, her current spouse and the minor child's brother full time in Cuba and Brazil until he was wrongfully removed (from Brazil and retained in the United States).

g. The minor child's half-brother resided solely and continuously with the minor child until the time of removal. The minor child has a significant and meaningful connection to his brother and the brothers have maintained that relationship throughout their lives until his wrongful removal to and retained in the United States.

h. The minor child has established friendships and strong familial relationships in Brazil.

i. The minor child speaks Portuguese.

j. The minor child was enrolled in school in Brazil.

k. Petitioner established a residence in Brazil with the minor child in which she lived in with the minor child, her current spouse, and the minor child's brother until the time of removal.

l. Petitioner has a steady income and stable home for the minor child in Brazil.

m. All of the minor child's doctors and medical professionals are located in Brazil.

n. The minor child participated in all of the cultural customs and traditions in Brazil.

o. At no time did the parties make plans for the minor child to move to the United States.

p. Petitioner and the minor child had healthcare coverage and received regular healthcare in Brazil.

41. Because the minor child's habitual residence at the time they were wrongfully removed to the United States was Brazil, Petitioner's custodial rights are defined by Brazilian law. *Convention Art. 3(a).*

42. Petitioner has custodial rights pursuant to Brazilian law, which made the child's removal and retention in the United States contrary to Petitioner's custodial rights.

43. Because Respondent's retainment of the minor child in the United States and removal from their habitual residence in Brazil violated Petitioner's custodial rights, the removal

and retainment was wrongful within the meaning of Article 3 of the Convention and in violation of Petitioner's rights under the Convention and the *ICARA*, *42 U.S.C. § 11601, et seq*.

44. Because Respondent's retainment in the United States and removal of the children from his habitual residence was wrongful, the Convention and the *ICARA* authorize this Court to order the return of the children forthwith. *Convention, Art. 3; 42 U.S.C. § 11603*.

45. *42 U.S.C. § 11604(b)* conditions this Court's authority to order a child removed from a person having physical control of the child on the satisfaction of applicable requirements of state law.

46. *ICARA* also authorizes this Court, "[i]n furtherance of the objectives of ... the Convention ... [to] take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." *42 U.S. C. § 11604*. Under Section 210(a) of the UCCJEA, "[t]he court may order any party to the proceeding who is in this State or over whom the court has personal jurisdiction to appear personally before the court. If that party has physical custody of the child[ren], the court may order that [s]he appear personally with the child…. ".

47. The purpose of the Convention is to determine which country is most appropriate to have jurisdiction, not to determine the best parent or to determine the best interest of the children. "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20, 130 S. Ct. 1983, 1995 (2010). "The entire purpose of the Convention is to deter parents from absconding with their children and crossing international borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction." *Walker v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012).

48. A complaint under the Convention may be treated as an application for a Writ of Habeas Corpus under *28 U.S.C. §2241, et seq.*, pursuant to which this Court may issue an order directing the mother to show cause on an expedited basis why the child should not be returned immediately to the jurisdiction of his habitual residence in Brazil. *See Zajaczkowski v. Zajaczkowski*, 932 F. Supp. 128, 132 (D. Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus ... pursuant to 28 U.S.C.A. § 2243"); *see also Miller v Miller*, 240 F.3d 392, 397- 98 (4th Cir. 2001); *In re: McCullough*, 4 F. Supp. 2d 411 (W. D. Penn., 1998); Convention, Art. 11 (Establishing six-week target time frame for resolution of petitions under the Convention).

49. The present Petition was filed less than one (1) year from the time that the Respondent wrongfully retained the Minor Child in the United States of America.

50. Petitioner has incurred, and will continue to incur, various necessary expenses, including court costs, legal fees, transportation and other costs relating to the return of the Minor Child. Petitioner respectfully requests that this Court award her all fees and costs, including transportation costs and attorney's fees, incurred as required by *28 U.S.C. § 9007*.

51. Pursuant to *28 U.S.C. § 9004* and the *Hague Convention, Article 16*, Petitioner requests that this Court issue an immediate order restraining Respondent from removing the child from the jurisdiction of this Court, directing any United States Marshall or other law enforcement officer to bring the child before this Court. Petitioner also asks this Court to schedule an expedited hearing on the merits of the Petition.

52. Pursuant to *28 U.S.C. § 9003(c)*, Respondent shall be given notice of these proceedings in accordance with the laws governing notice to interstate child custody proceedings.

## V. Request for Relief

WHEREFORE, the Petitioner, YUNISADAY GUTIERREZ MACIAS, respectfully requests that this Court enter orders granting him the following relief:

A. A Preliminary Show Cause Order:

1. Commanding the Respondent, Jose Fernando Jiminez Inerarity, (with or without the minor child) to appear in this Court to show cause why the minor child has been kept from his mother and why the minor child should not be returned to Brazil forthwith including the scheduling of an expedited preliminary hearing on the merits of the Complaint, an Order that Respondent show cause at this hearing why the child should not be returned to Brazil and, pursuant to *Federal Rule of Civil Procedure 64*, an Order that the trial of the action on the merits be advanced and consolidated with the hearing on the verified complaint;
2. Requiring the Respondent to surrender to this Court any passports, residency and travel documents in his name, Petitioner's name, and/or in the name of the minor child;
3. Prohibiting the child's removal from the jurisdiction of this Court, pending final determination of the Petition;
4. Providing that if the Respondent fails to appear pursuant to this Court's Show Cause Order, this Court will issue an Order directing that the name of the minor child be entered into the national police computer system (N.C.I.C.) missing persons section and that an arrest warrant will be issued for Respondent; and

B. A Final Order:

1. An Order declaring and adjudicating that the Respondent's removal/retention of the child in the United States was wrongful under Article 3 of the Convention;
2. An Order compelling the return of the child to their habitual residence in Brazil;
3. An Order requiring the Respondent to pay the necessary expenses incurred by the Petitioner in connection with these proceedings, pursuant to *22 U.S.C. § 9007*, such expenses and costs to be resolved via post-judgment motion; and
4. Granting such other and further relief as this Court deems just and proper.

Dated this 6th day of March, 2024.

/s/ Anthony G. Joseph
**ANTHONY G. JOSEPH**

**MASTERS LAW GROUP LLC**
Anthony G. Joseph, Esq.
Erin E. Masters, Esq.
1900 Spring Road, Suite 530
Oak Brook, Illinois 60523
Phone : (312) 609-1700
Facsimile : (312) 893-2002
ajoseph@masters-lawgroup.com

**EXHIBIT LIST**

**Exhibit A**: The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (T.I.A.S. No. 11, 670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed Reg. 10494 (1986)

**Exhibit B**: Redacted Birth Certificate of Minor Child

**Exhibit C**: Divorce Decree of Petitioner and Respondent

**Exhibit D:** Cuban Allocation Judgment

**VERIFICATION**

Under penalties of perjury, the undersigned hereby certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information, and belief, such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

/s/ *Yunisaday Gutierrez Macias*
YUNISADAY GUTIERREZ MACIAS

This 6th day of March, 2024